**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

RECEIVED

| | |
|---|---|
| **B &D MONK, LLC**<br>**d/b/a  PHENIX CITY**<br>**EXPRESS WASH** | ) <br> ) <br> ) <br> ) <br> ) |
| **Plaintiff,** | ) <br> ) |
| **v.** | ) <br> ) |
| **DLR ASSOCIATES, LLC**<br>**d/b/a  GOO GOO CAR WASH** | ) <br> ) <br> ) |
| **Defendant.** | ) |

2008 MAR 11  A 8: 48

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

Civil Action No. 3:08CV166-SRW

### COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, B & D Monk, LLC (hereinafter MONK), doing business as "Phenix City Express", files this Compliant for Declaratory Relief against Defendant, DLR Associates (hereinafter DLR), doing business as "Goo Goo Car Wash", and alleges:

### Nature of Case, Subject Matter Jurisdiction and Venue

1.      This is an action for declaratory relief stemming from DLR's January 15, 2008, and February 27, 2008  "cease and desist" letters, true and correct copies of which letters are attached hereto as Exhibits "A" and "B ." These "cease and desist" letters relate to the trade dress and trademarks used by MONK for its Car Wash facility. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1338; 28 U.S.C §§2201 and 2202; as well as 15 U.S.C. §1121 relating to trademark, trade dress, unfair competition, and dilution claims arising under Section 43(a)the Lanham Act, 15 U.S.C. § 1125, et seq. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

2.      Venue is proper in this district pursuant to 28 U .S.C. §1391 on either of the following alternative grounds : (a) A substantial part of the events giving rise to the instant claim for declaratory relief and the subject matter thereof occurred in this district, including, without limitation, that MONK received the "cease and desist" letter from DLR in this District, that MONK's principal place of business is located in this district, and that MONK adopted and commenced use of the trade dress that is the subject of the "cease and desist" letter in this district; and (b) DLR is subject to personal jurisdiction in this district.

3.      MONK is a Limited Liability Company, organized and existing under the laws of the State of Georgia, with its principal place of business in this district, wherein MONK operates as a seller of car cleaning services.

4.      DLR is a Limited Liability Company, organized and existing under the laws of the State of Georgia, with its principal place of business in Columbus, Georgia.  DLR operates in this District as a seller of car cleaning services and/or as a franchisor of the Goo Goo Car Wash brand.

5.      In its "cease and desist" letter, DLR demands that MONK "(1) cease and desist from the use  of its trade dress, which it listed as consisting of a number of different visual aspects of its car wash, in connection with any Car Wash facilities; (2) immediately remove, destroy, or significantly modify all elements of MONK'S trademarks and trade dress that are similar to those of DLR; and (3) cease and desist from any further use of DLR's trade Dress, or any other violations of trademark or unfair competitions laws.

6.      In its cease and desist letter, DLR listed a number of different aspects of its Car Wash facility that it claims that MONK "intentionally copied and only slightly modified" in

violation of DLR's trademarks and trade dress. Each of these alleged violations will be discussed separately below.

## Legal Requirements for Trade Dress Protection

7.      Trade dress law does not provide a blanket protection "from a competitor's imitation of one's marketing concept," or "the mere method and style of doing business." *Goddard, Inc. v. Henry's Foods, Inc.,* 291 F.Supp.2d 1021, (D.Minn. 2003)

8.      In order to receive protection for trade dress, under the Lanham Act, a claimant must show that the identifying mark is distinctive and capable of being protected, by showing that it is either inherently distinctive, or has acquired distinctiveness through secondary meaning; *that the trade dress is primarily non-functional*; and that there is a likelihood of confusion. (emphasis added) *Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 209-14, (2000); see also, Two Pesos, Inc. v. Taco Cabana, Inc., 112 S.Ct. 2753 91992)

## No Trade Dress Infringement of DLR's Canopies

9.      In its cease and desist letter, DLR states the following:

"The styling of the [MONK] canopies is almost exactly the same as the styling of the [DLR] canopies in that they both have the same basic dimensions and structure, striping, bull nosed corners, and the words "FREE VACUUM" in the same font and placement. The only apparent difference is the colors used by [MONK], which difference is easily lost among the extensive similarities.

10.     The cease and desist letters does not specify which of MONK's canopies or awnings that DLR asserts violates its trade dress

11. The attached pictures show that the main visible canopies or awnings of MONK as shown in Exhibit C are vastly different in terms of shape, color, dimension, and overall appearance from those of DLR as shown Exhibit D.

12.     Contrary to DLR's assertions, the striping of each of these awnings or canopies is distinct in both number and color. DRL's canopies are all metal and contain four stripes that

alternate red and yellow as shown by Exhibit D. MONK's metal awnings or canopies contain only three stripes and these alternate blue and red as shown by Exhibit C, while MONK has a solid red fabric canopy at its entrance.

13.     DLR's awnings or canopies are all bull nosed as shown by Exhibit X. Bull nosed refers to a noticeable rounding, where otherwise, ninety degrees corners would normally appear at the junction of adjacent portions of the canopy. MONK's canopies are not all bull nosed as shown by Exhibit C.

14.     Furthermore, DLR's awnings or canopies should not found to provide protectable trade dress. See, *Rally's, Inc. v. International Shortstop, Inc,* 776 F.Supp. 451, 454-55 (E.D.Ark. 1990) (The Court ruled that the "trade dress package of a fast food restaurant including colors, awnings, and lighting was functional and was not protected under Lanham Act.").

15.     DLR's canopies or awnings provide a functional aspect of providing increased visibility, protecting the customers from the sun and inclement weather, and drawing the customer's attention. As such, the canopies provide a primarily functional purpose and thus are prohibited from trade dress protection.

16.     DLR's canopies or awnings are not distinctive, and DLR cannot show secondary meaning as to its canopies; therefore, DLR's canopies are not protected by trade dress or trademark protection.

17.     MONK'S canopies or awnings are not confusingly similar to DLR's canopies or awnings.

### No Trade Dress Infringement of DLR's <u>Entrance Station</u>

18.     In its cease and desist letter, DLR states the following:

"Similar to the canopies, the entrance station to the [MONK] facility is substantially similar to the [DLR] format and gives the confusing impression to a customer that they are at a Goo Goo Car Wash. [MONK] uses essentially the

same two bay covered canopies with substantially similar menu boards and order machines.

19.     There are a number of obvious differences in terms of color, layout, size, and general appearance between DLR's Entrance station as shown in Exhibit E and Monk's Entrance Station as shown in Exhibit F.

20.     The entrance of MONK is not confusingly similar to DLR's entrance.

21.     The Entrance station canopies of both Car Washes are functional as discussed above.

22.     The order machines located at the entrance of both Car Washes are also functional and are needed to allow the customer to select and pay for various services. Exhibit G—Goo Goo Car Wash and Exhibit H – Phenix City Express Wash.

23.     The Entrance and Order Machines located at the entrance of DLR's car wash is not inherently distinctive and DLR cannot show secondary meaning as to the Entrance and Order Machines.  In fact, many different participants in the car wash industry use a similar Entrance and similar Order Machines.

24.     The Order Machines of both Plaintiff and Defendant come from the same supplier and/or manufacturer.

25.     The appearance of MONK's entrance and order machines do not infringe upon the trade dress or trademark rights of DLR.

### No Trade Dress Infringement of DLR's <u>Menu Boards</u>

26.     In its cease and desist letter, DLR states the following:

[A] customer's initial impression of the [MONK] menu board will convey the sense of being at a Goo Goo Car Wash due to the substantial similarities in the shape of the board, the arrangement of the various options available, and the logo emblazed thereon.

27.    Admittedly, both the MONK and DLR menu boards have a similar rectangular shape, which as shown in Exhibit I—Goo Goo Car Wash menu board and Exhibit J – Phenix City Express Wash menu board. There is nothing distinct or artistic regarding the shape of the menu boards.

28.    Both DLR and MONK organize the options from highest price at the top of the board, descending in order to the lowest price at the bottom of the board. This is a logical and functional arrangement of services that cannot be protected as trade dress.

29.    Aside from the rectangular shape, the overall color and general appearance of the menu boards are very different.

30.    DLR's menu boards contain minimal colors and a flat background, while MONK seperates each menu option by vivid blocks of distinct colors. There is also no similarity in the titles or wording of the different menu options. There are no instances of similarity in aspect of the menu boards that is an artistic embellishment that would give rise to trade dress protection.

31.    DLR's menu boards are functional providing customers with a list of services to choose from at the point of sale. As such, the menu boards provide a primarily functional purpose and thus are prohibited from trade dress protection.

32.    DLR's menu boards are not distinctive, and DLR cannot show secondary meaning as to its menu boards; therefore, DLR's menu boards are not protected by trade dress or trademark protection.

33.    MONK'S menu boards are not confusingly similar to those of DLR.

## No Trade Mark Infringement of DLR's <u>Logo</u>

34.    In its cease and desist letter, DLR states the following:

Although you had a multitude of options available to you, instead of choosing or designing a unique logo, you have apparently taken the readily recognizable logo of Goo Goo Car Wash, made a few changes and adopted it as your own. Specifically, you have chosen to use an animated vehicle with large oval eyes for headlights, a big friendly smile and a tapered backend, all in front of a circular background

35.    DLR asserts that despite "a multitude of options available", MONKs use of a car in its logo demonstrates copying of its Trademark. However, the selection of the image of a car as its logo is a functional and logical way of notifying potential customers that these businesses operate *Car* Wash facilities.

36.    The two logos are not confusingly similar.

37.    Other than both of the vehicles in the two logos having anthropomorphic eyes, there are no similarities between the vehicles in the different logos: (a) DLR's vehicle is an older model brown sedan, whereas the MONK vehicle is a modern, bright red, sports car; and (c) DLR's vehicle seems to smile by using its grill or the opening of its hood, whereas MONK's uses its bumper to form the smile.

38.    There are other numerous distinct artistic choices that distinguish these vehicles. As such, it is unlikely that a consumer would confuse these logos.

39.    The images behind the vehicles are also very different. DLR's logo has a flat, monotone circle as a background as shown by Exhibit K. MONK's logo has a multicolored crashing wave with bubbles as shown by Exhibit L.

40.    In its logo, MONK also uses the image of a crashing wave and bubbles to evoke the water used to clean cars and the bubbles suggest soap bubbles. These images reinforce the overall concept that MONK's facility offers car cleaning services.

41.    The use of a car in DLR's logo is generic or functional in that it operates a car

wash.

42.    The use of a car in DLR's logo is not distinctive, and DLR cannot show

secondary meaning as to its use of a car in its logo; therefore, the use of a car in DLR's logo is

not protected by trade dress or trademark protection.

43.    MONK'S logo is not confusingly similar to DLR's logo.


**No Trade Dress Infringement of DLR's <u>Slogans</u>**

44.    In its cease and desist letter, DLR states the following:

"It is also evident that you have "borrowed" [DLR's] slogan "THREE MINUTE
EXPRESS WASH" and modified it to read "THREE DOLLAR EXPRESS
WASH", and [DLR's] slogans "THANK YOU! WE LOVE A CLEAN CAR" and
"WE LOVE TO PLEASE YOU" and modified them to read "THANK YOU
PHENIX CITY AND COLUMBUS. WE LOVE OUR CUSTOMERS.""

45.    On January 16, 2007, DLR was granted a Trademark, Registration

Number 3198061, for the word mark "GOO-GOO 3 MINUTE EXPRESS WASH" when

used in conjunction with the image shown in Exhibit M. Specifically mentioned in the

registration was the following statement "Disclaimer: NO CLAIM IS MADE TO THE

EXCLUSIVE RIGHT TO USE "3 MINUTE EXPRESS WASH" APART FROM THE

MARK AS SHOWN." As such, DLR is estopped from now attempting to claim

trademark rights solely to the slogan "Three Minute Express Wash."

46.  The phrase "Three Minute Express Wash" is a functional description

of its services and is not entitled to trade dress or trademark protection. See,

*Goddard, Inc. v. Henry's Foods, Inc.*, supra at 121. ([T]rade dress protection should only

be offered where it would "accord protection to symbols consumers are likely to rely

upon in distinguishing goods," and should be denied where it "*would hamper efforts to market competitive goods*.") A picture of the sign for the Goo Goo car wash in question is attached here as Exhibit N.

47.    MONK's use of the phrase "$3.00 Express Wash" in its sign or on its building is not confusingly similar to any trademark or trade dress of DLR. See, Exhibit O – a picture of the main sign for the Phenix City Express Wash.

48.    THREE MINUTE EXPRESS WASH is a generic or functional term, which cannot be protected as a trademark or trade dress.

49.    FREE VACUUM is a generic or functional term, which cannot be protected as a trademark or trade dress.

50.    MONK's use of the phrase "FREE VACUUM" in its sign or on its building is not confusingly similar to any trademark or trade dress of DLR.

51.    DLR further attempts to claim other unprotectable generic phrases such as "Thank You!" and "We Love a Clean Car." (See Exhibit P)

52.    MONK uses the phrase "Thanks. We Love Our Customers." (See Exhibit Q)

53.    Upon further examination, the only similarities between MONK's slogan and DLR's slogans are the sentence fragments "THANK[S]" and "WE LOVE." DLR cannot seriously contend that it has enforceable rights in any phrase that contains "THANK YOU" and "WE LOVE." As such, MONK has not infringed upon any DLR's protectable trade dress or trademark rights.

### No Trade Dress Infringement of DLR's <u>Traffic Light</u>

54.    In its cease and desist letter, DLR states the following:

"Rather than simply using a lit message board, green light or some other mechanism to direct customers when to leave the washing station, just as Goo Goo Car Wash uses an actual traffic light to direct its customers, you have also chosen to use an actual traffic light to direct your customers. Additionally, the placement of the traffic light is substantially the same as the placement of the traffic light at the GGCW facilities.

55.     MONK's use of a traffic light in its car wash is yet another example of a functional item that cannot garner trade dress protection.

56.     It should be noted that there are physical differences between the two traffic signals. DLR's traffic light contains the traditional red, yellow, and green configuration (see Exhibit R), whereas MONK's light has only two lights – red and green (see Exhibit S).

57.     In both car washes, the traffic signals perform the same necessary function. The signs tell a driver when to stop and when to go. This is an important functional use that can only be conveyed to a driver through the use an immediately recognizable symbol.  As such, DLR's traffic signal is a functional item that should not receive trade dress protection.

58.     The use of a traffic light at the end of DLR's car wash is generic or functional in that it instructs drivers when to exit the car wash.

59.     The use of a traffic light by DLR's logo is not inherently distinctive, and DLR cannot show secondary meaning as to its use of the traffic light; therefore, the use of a traffic light by DLR is not protected by trade dress or trademark protection.

60.     MONK'S use of a traffic light to instruct drivers when to exit its car wash is not confusingly similar to any trademark or trade dress of DLR.


**No Trademark Infringement**

61.    As shown above and in the exhibits hereto, there is no likelihood of confusion between the MONK logo/trademark and the DLR logo/trademark.

62.    No other element essential to an actionable infringement upon the DRL logo/trademark arises from MONK's use of its logo/trademark.

### No Trade Dress Infringement

63.    As shown above and in the exhibits hereto, there is no likelihood of confusion between the MONK Trade Dress and the DLR Trade Dress.

64.    No other element essential to an actionable infringement upon the DLR Trade Dress arises from MONK's use of its Trade Dress.

### No Unfair Competition

65.    As shown above and in the exhibits hereto, no claim for unfair competition as to the DLR trademark or Trade Dress arises from MONK's use of its trademark or Trade Dress.

66.    In fact, DLR is engaging in unfair competition by making baseless allegations of trade dress or trademark infringement by its competitor without good cause and in bad faith.

67.    As the result of DLR's baseless allegations and acts of bad faith, MONK has been forced to retain counsel and to bring this lawsuit.

### No Dilution

68.    As shown above and in the exhibits hereto, no claim for dilution as to the DLR trademark or Trade Dress arises from MONK' s use of its trademark or Trade Dress.

### COUNT I-DECLARATORY RELIEF

MONK restates and re-alleges paragraphs X through X above, and further alleges:

69.    As a result of DLR' s "cease and desist " letter, an actual case or controversy exists between the parties .

70.    MONK has engaged undersigned counsel to represent it in this matter for which

MONK is obligated to pay reasonable attorneys' fee.

71.    MONK is being threatened with an action for damages, treble damages, and other

relief based upon its past and continued use and operation of the Phenix City Express Wash,

MONK is in need of, and entitled to, a judicial declaration of each parties' respective rights and

liabilities as they pertain to MONK' s use of its Trademarks and Trade Dress.

**WHEREFORE, MONK respectfully requests:**

(1) Judgment in favor of MONK and against DLR declaring that:

(a) As shown above and in the exhibits hereto, any Trade Dress in use by MONK

at the Phenix City Car Wash do not infringe upon DLR's Trade Dress in use at its Goo

Goo Car Wash;

(b) As shown above and in the exhibits hereto, any Trademarks in use by MONK

at the Phenix City Car Wash do not infringe upon DLR's Trademarks in use at its Goo

Goo Car Wash;

(c) As shown above and in the exhibits hereto, no claim for unfair competition as

to DLR's trademark or trade Dress arises from MONK's use of its trademarks or trade

dress in use by MONK at the Phenix City Express Wash;

(d) As shown above and in the exhibits hereto, no claim for dilution as to DLR's

trademark or trade Dress arises from MONK's use of its trademarks or trade dress in use

by MONK at the Phenix City Express Wash; and

(e) MONK is otherwise without liability to DLR, or any of its licensees or

assigns, stemming from MONK's use of its trademarks or trade dress in use by MONK at

the Phenix City Express Wash;

(2) an award of costs against DLR;

(3) an award of reasonable attorneys' fees against DLR ; and

(4) any other relief the Court may deem just and appropriate.

**RESPECTFULLY SUBMITTED** this the ___11th___ day of MARCH, 2008.

Raymond L. Jackson, Jr. (JAC054)
Attorney for Plaintiff B&D Monk, LLC
d/b/a Phenix City Express Wash


**OF COUNSEL:**
Raymond L. Jackson, Jr.
JACKSON LAW GROUP, P.C.
P.O. Box 3575
Auburn, Alabama 36831-3575
(334) 821-0600
(334) 821-1950 (FAX)
rjackson@auburnattorney.com

# PAGE, SCRANTOM, SPROUSE, TUCKER & FORD, P. C.

### ATTORNEYS AND COUNSELLORS AT LAW

SYNOVUS CENTRE

1111 BAY AVENUE, THIRD FLOOR

COLUMBUS, GEORGIA 31901

WEB SITE ADDRESS:

WWW.COLUMBUSGALAW.COM

MAILING ADDRESS:

P. O. BOX 1199

COLUMBUS, GEORGIA 31902

TELEPHONE (706) 324-0251

TELECOPIER (706) 323-7519

Jerald L. Watts

(706) 243-5624

jlw@psstf.com

W. M. PAGE
W. G. SCRANTOM, JR.
J. EDWARD SPROUSE
WILLIAM L. TUCKER
CHARLES H. FORD, JR.*
E. LOWRY REID, JR.
S. DAVIS LANEY
MARCUS B. CALHOUN, JR.
CECIL M. CHEVES*
J. RONALD MULLINS, JR.
RUSSELL E. HINDS*
DAVID A. SIEGEL
ALLAN E. KAMENSKY
DAVID A. BUEHLER
VIRGIL TED THEUS
JAMES C. CLARK, JR.

*ALSO ADMITTED IN ALABAMA

ANGELA M. HICKS*
JERALD L. WATTS, II
ROBERT M. McKENNA
KENNETH E. EVANS, JR.*
THOMAS F. CRISTINA**
ROBERT C. BRAND, JR.
JOSEPH A. SILLITTO
LINDA D. NGUYEN*
TRAVIS C. HARGROVE*
CHANDLER W. RILEY*
ADAM R. PEASE*
APRIL H. HOCUTT*
LAUREN K. DIMITRI

**ALSO ADMITTED IN VIRGINIA
AND THE DISTRICT OF COLUMBIA

January 15, 2008

**VIA CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**
Phenix City Express Wash
1419 Highway 280 Bypass
Phenix City, Alabama  36867
Attn:  Mr. David Monk

Re:    Goo  Goo  Express  Wash:    Trade  Dress  Infringement,  Trademark  Infringement,
Copyright Infringement, and Unfair Competition

Dear Mr. Monk:

Our firm represents DLR Associates, LLC d/b/a Goo Goo Car Wash ("GGCW").  Over the years, our client has spent significant amounts of time and money developing and promoting the unique image of its business.  As a result of its extensive efforts, the general public has come to immediately associate the GGCW trade dress and trademarks with the high quality express car wash services provided by GGCW.  Thus, the GGCW trade dress and trademarks represent a significant amount of goodwill and value to GGCW, which it desires to ardently protect.

It has come to our attention that you are building and operating stores under the name Phenix City Express Wash ("PCEW") having a trade dress and trademarks significantly similar to the trade dress of our client's facilities.  At just the first glance, one immediately gets the impression that your facility is a Goo Goo Car Wash, and, upon further viewing, can only conclude that you have essentially copied almost every aspect and distinguishing feature of GGCW's trade dress, with a few tweaks here and there.  Specifically, it is evident that, among others, you have intentionally copied and only slightly modified the following elements of our client's trade dress and trademarks:

1. Canopies:  The styling of the PCEW canopies is almost exactly the same as the styling of the GGCW canopies in that they both have the same basic dimensions and structure, striping, bull-nosed corners, and the words "FREE VACUUM" in the same font and placement.  The only apparent difference is the colors used by PCEW, which difference is easily lost among the extensive similarities.  (Reference is hereby made to Exhibit "A").

G0805-0003.1

EXHIBIT A

Mr. David Monk
January 15, 2008
Page 2

2. <u>Entrance Station</u>:  Similar to the canopies, the entrance station to the PCEW facility is substantially similar to the GGCW format and gives the confusing impression to a customer that they are at a Goo Goo Car Wash.  PCEW uses essentially the same two-bay covered canopies with substantially similar menu boards and order machines. (Reference is hereby made to <u>Exhibit "B"</u>).

3. <u>Menu Boards</u>:  Just as with the entrance station to the PCEW facility, a customer's initial impression of the PCEW menu board will convey the sense of being at a Goo Goo Car Wash due to the substantial similarities in the shape of the board, the arrangement of the various options available, and the logo emblazoned thereon.  (Reference is hereby made to <u>Exhibit "C"</u>).

4. <u>Logo</u>:  Although you had a multitude of options available to you, instead of choosing or designing a unique logo, you have apparently taken the readily recognizable logo of Goo Goo Car Wash, made a few changes and adopted it as your own.  Specifically, you have chosen to use an animated vehicle with large oval eyes for headlights, a big friendly smile and a tapered backend, all in front of a circular background.  (Reference is hereby made to <u>Exhibit "D"</u>).

5. <u>Slogans</u>:  It is also evident that you have "borrowed" GGCW's slogan "THREE MINUTE EXPRESS WASH" and modified it to read "THREE DOLLAR EXPRESS WASH", and GGCW's slogans "THANK YOU!  WE LOVE A CLEAN CAR" and "WE LOVE TO PLEASE YOU" and modified them to read "THANK YOU PHENIX CITY AND COLUMBUS.  WE LOVE OUR CUSTOMERS".  (Reference is hereby made to <u>Exhibit "E"</u>).

6. <u>Traffic Light</u>:  Rather than simply using a lit message board, green light or some other mechanism to direct customers when to leave the washing station, just as Goo Goo Car Wash uses an actual traffic light to direct its customers, you have also chosen to use an actual traffic light to direct your customers.  Additionally, the placement of the actual traffic light is substantially the same as the placement of the traffic light at the GGCW facilities.  (Reference is hereby made to <u>Exhibit "F"</u>).

The confusion created by your use of the GGCW trade dress may manifest itself in several ways.  For example, your use of the GGCW trade dress may erroneously lead consumers to purchase your services, when in fact the customers believe that they are purchasing our client's services.  Additionally, consumers familiar with your company's services that encounter one of our client's facilities may become confused as to the true source of the services provided.  Such confusion between the source of our client's services and your company's services will most certainly dilute the value of GGCW's trade dress and consequently the value of its goodwill and business as a whole.

In fact, such use of substantially similar and confusing trade dress and trademarks has already caused confusion in the marketplace, is irreparably harming our client's goodwill and, we believe, constitutes willful and intentional trade dress and trademark infringement in violation of both federal and state law.

G0805-0003.1

Mr. David Monk
January 15, 2008
Page 3

This letter is formal notice that your actions constitute an infringement of our client's trade dress and trademark rights under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a). Two Pesos, Inc. v. Taco Cabana, Inc., 60 U.S.L.W. 4762 (1992 WL 141119 (U.S.)).

Based on the foregoing, our client hereby demands that you immediately take the following actions:

(i)     Cease and desist from the operation and construction of car wash facilities having trade dress similar to the trade dress of the Goo Goo Car Wash facilities;

(ii)    Remove, destroy and/or significantly modify appropriate, all elements of your company's trade dress, trademarks, and store design that are similar to the GGCW trade dress and trademarks; and

(iii)   Cease and desist from all current and any future use of GGCW's trade dress and any and all other violations of the trademark and unfair competition laws.

While our client wishes to avoid litigation, if you fail to comply with these demands, our client will be forced to consider its legal options, which include seeking relief in federal court for an injunction and damages. Judicial relief includes, but is not limited to: destruction of the infringing elements under 15 U.S.C. §1118; *treble damages*, your profits, any damages sustained by our client, court costs and attorneys fees under 15 U.S.C. §1117; and injunctive relief under 15 U.S.C. §1116.

Please use the attached form to confirm in writing to this office that you have received and complied with this letter **on or before Friday, January 25, 2008**. All correspondence regarding this matter should be directed to this office.

GGCW reserves all rights it may have under law, and neither waives nor abandons its rights by sending you this demand letter prior to filing suit.

Thank you very much for your cooperation and prompt attention to this very serious matter. We look forward to your prompt response.

Sincerely,

PAGE, SCRANTOM, SPROUSE,
TUCKER & FORD, P.C.

By
Jerry L. Watts

JLW/lja
Enclosures
cc:     DLR Associates, LLC ✓

G0805-0003.1

<u>ACKNOWLEDGMENT</u>

Please be advised that Phenix City Express Wash and any and all of its affiliates have complied with all of the foregoing demands as of January 25, 2008, and will promptly provide the proper evidence and documentation to verify same.

PHENIX CITY EXPRESS WASH

By: _____

    Name: _____

    Title: _____

    (Corporate Seal)


_____(L.S.)
DAVID MONK

G0805-0003.1

Color Photos
WILL NOT SCAN

Available for
conventional
viewing in the
Clerk's Office

# PAGE, SCRANTOM, SPROUSE, TUCKER & FORD, P. C.
### ATTORNEYS AND COUNSELLORS AT LAW
SYNOVUS CENTRE

W. M. PAGE
W. G. SCRANTOM, JR.
J. EDWARD SPROUSE
WILLIAM L. TUCKER
CHARLES H. FORD, JR.*
E. LOWRY REID, JR.
S. DAVIS LANEY
MARCUS B. CALHOUN, JR.
CECIL M. CHEVES*
J. RONALD MULLINS, JR.
RUSSELL E. HINDS*
DAVID A. SIEGEL
ALLAN E. KAMENSKY
DAVID A. BUEHLER
VIRGIL TED THEUS
JAMES C. CLARK, JR.

*ALSO ADMITTED IN ALABAMA

1111 BAY AVENUE, THIRD FLOOR
COLUMBUS, GEORGIA 31901

WEB SITE ADDRESS:
WWW.COLUMBUSGALAW.COM

MAILING ADDRESS:
P. O. BOX 1199
COLUMBUS, GEORGIA 31902
TELEPHONE (706) 324-0251
TELECOPIER (706) 323-7519

JERRY L. WATTS
(706) 243-5624
jlw@psstf.com

ANGELA M. HICKS*
JERALD L. WATTS, II
ROBERT M. McKENNA
KENNETH E. EVANS, JR.*
THOMAS F. GRISTINA**
ROBERT C. BRAND, JR.
JOSEPH A. SILLITTO
LINDA D. NGUYEN*
TRAVIS C. HARGROVE*
CHANDLER W. RILEY*
ADAM R. PEASE*
APRIL H. HOCUTT*
LAUREN K. DIMITRI

**ALSO ADMITTED IN VIRGINIA
AND THE DISTRICT OF COLUMBIA

February 27, 2008

**VIA CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**
Phenix City Express Wash
1419 Highway 280 Bypass
Phenix City, Alabama  36867
Attn:  Mr. David Monk

Re:    Goo Goo Express Wash:  Trade Dress Infringement, Trademark Infringement,
       Copyright Infringement, and Unfair Competition

Dear Mr. Monk:

On January 15, 2008, we delivered a letter to you by Certified Mail requesting that you cease and desist from using the trademarks and trade dress of our client, DLR Associates, LLC d/b/a Goo Goo Car Wash ("GGCW"), an additional copy of which is attached for your reference. We can only presume that you have received a copy of this letter as it was signed for by Mr. Gregory S. McDonald on January 17, 2008.  Unfortunately, it appears that you have failed to recognize the serious nature of the matters addressed in this letter regarding your flagrant infringement of the trade dress and trademarks of GGCW.  Although our client still wishes to avoid litigation, your failure to respond in any way leads us to believe that nothing short of litigation will resolve this matter.  Nonetheless, we hereby reiterate our demands that you immediately take the actions set forth in our previous letter.  If you will confirm in writing to this office that you have taken significant steps to comply with these demands **on or before Friday, March 7, 2008**, our client will consider your actions to be in good faith and will cease from the instigation of a claim against you for infringement and unfair competition.  However, if you fail to take any material steps towards the satisfaction of these demands, our client will be forced to seek judicial relief in federal court for an injunction and appropriate damages.

Please use the attached form to confirm in writing to this office that you have received this letter and taken significant steps toward satisfying GGCW's reasonable demands.  Please direct all correspondence regarding this matter directly to me.

G0805-0003.3                        EXHIBIT B

Mr. David Monk
February 27, 2008
Page 2


GGCW reserves all rights it may have under law, and neither waives nor abandons its rights by sending you this demand letter prior to filing suit.

We look forward to hearing from you promptly.

Sincerely,

PAGE, SCRANTOM, SPROUSE,
TUCKER & FORD, P.C.

By _____
Jerry L. Watts

JLW/lja
Enclosures
cc:    DLR Associates, LLC


G0805-0003.3

## ACKNOWLEDGMENT

Please be advised that Phenix City Express Wash and any and all of its affiliates have complied with all of the foregoing demands as of March 7, 2008, and will promptly provide the proper evidence and documentation to verify same.

PHENIX CITY EXPRESS WASH

By: _____

       Name: _____

       Title: _____

       (Corporate Seal)

_____(L.S.)
DAVID MONK

G0805-0003.3

Color Photos
WILL NOT SCAN

Available for
conventional
viewing in the
Clerk's Office

DUPLICATE

Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602004241
Cashier ID: brobinso
Transaction Date: 03/11/2008
Payer Name: RAYMOND L JACKSON JR
------------------------------------
CIVIL FILING FEE
 For: RAYMOND L JACKSON JR
 Case/Party: D-ALM-3-08-CV-000166-001
 Amount:        $350.00
------------------------------------
CHECK
 Check/Money Order Num: 1333
 Amt Tendered:  $350.00
------------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00

B & D MONK LLC V. DLR ASSOCIATES
LCC